OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be reversed, without costs, the petition reinstated, and the matter remitted to Supreme Court for further proceedings in accordance with this memorandum.
William Endreson began working as a bridge and tunnel *890 officer with the Triborough Bridge and Tunnel Authority on July 17, 1974. Authority employees hired between July 1, 1973 and June 30, 1976 became Tier II employees governed by article 11 of the Retirement and Social Security Law, and Endreson entered the New York City Employees’ Retirement System on August 13, 1974.[1] On July 26, 1975, Endreson elected to receive a death benefit pursuant to Retirement and Social Security Law § 448 (a) (1), which allowed for payment of one month’s salary for every year of service, up to 36 years.
Endreson developed lung cancer and died on December 19, 1989. He last reported for work on September 26, 1988, when he was granted a medical leave of absence, receiving short-term disability payments until February 23, 1989, and long-term disability payments from late February until his death 10 months later. During the period of short-term disability, Endreson received payment for "check-in/check-out” time, in accordance with the collective bargaining agreement, which also mandated that the payment be included as "earnings” for the purpose of pension computations.
The claim of appellant, Endreson’s widow, for his death benefit was denied by an administrator of the New York City Employees’ Retirement System (NYCERS), on the grounds that Retirement and Social Security Law § 448 (e) (1) bars recovery of a death benefit to survivors of employees who die while "off the payroll” and were not "on the payroll in such service and paid within a period of twelve months prior to his death.” The president of the Triborough Bridge and Tunnel Authority unsuccessfully sought to intervene on appellant’s behalf, asserting that at the time of his death, the Authority had considered Endreson to be "on the payroll” but on medical leave of absence, receiving full medical and union welfare fund benefits.
Appellant filed a CPLR article 78 proceeding, and Supreme Court ordered payment of the death benefit, finding that the "check-in/check-out” pay brought Endreson within the exception to Retirement and Social Security Law § 448 (e). The Appellate Division reversed, however, concluding that section 448 (e) referred only to payment for regular wages within the preceding 12 months, and that check-in/check-out pay did not constitute regular wages.
*891 While the parties’ contentions focus on whether "check-in/ check-out” pay constitutes being "paid on the payroll,” a fundamental question of potentially broad significance was unresolved below. The Comptroller’s regulation (2 NYCRR 309.7 [a]) expressly provides for payment of death benefits for members who die while on authorized medical leave of absence, which would resolve the issue in appellant’s favor. Respondent NYCERS asserts, without authority, that it is not bound by a regulation of the New York State Comptroller and has an independent obligation to interpret the statute at issue.
Notably, neither Supreme Court nor the Appellate Division considered the effect of 2 NYCRR 309.7 on appellant’s claim. Of concern as well is the apparent failure to request intervention of the Comptroller pursuant to CPLR 1012 (c).[2] The Legislature added this provision in 1972 to prevent courts from ruling on broad-scale pension issues "without the benefit of complete information which only the Comptroller can supply” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1012:6, at 153). The Comptroller may decline to intervene, but under the statute must be given opportunity to weigh in on questions concerning rules or law governing public pension and retirement benefits.
Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur in memorandum; Judge Titone taking no part.
Order reversed, etc.

. According to Administrative Code of the City of New York § 13-101 (3) (b), employees of the Triborough Bridge and Tunnel Authority are considered to be in "city-service” for purposes of membership in NYCERS.

. CPLR 1012 (c) imposes an affirmative duty upon the court to notify the State Comptroller whenever a question arises concerning interpretation of any rules or law governing a public retirement system or benefits "to be paid by a state retirement system or any other retirement system established for public employees within this state or any subdivision thereof” (emphasis added).